AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (225) 371-0522 THAT IS STORED AT PREMISES CONTROLLED BY AT&T | )<br>)<br>)  Case No. 23-MJ-22<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

located in the **Southern** District of **Florida**, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1)<br>21 U.S.C. § 846 | Drug Trafficking Violations |

The application is based on these facts:

**SEE ATTACHED AFFIDAVIT**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Logan Collins, FBI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone conference** *(specify reliable electronic means)*.

Date: 3/7/2023

*Judge's signature*

City and state: Baton Rouge, Louisiana    Richard L. Bourgeois, Jr., U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Logan Collins, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(225) 371-0522** ("**TARGET TELEPHONE THREE**"), with a subscriber of **Robert PENNYWELL, a.k.a. "Black Bo"** ("**PENNYWELL**"), whose service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, Suite 600, North Palm Beach Florida 33408. As a result of a Federal Bureau of Investigation (FBI) investigation, it was learned that **TARGET TELEPHONE THREE** is being utilized by **PENNYWELL**. **TARGET TELEPHONE THREE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Baton Rouge Police Officer currently assigned to the Federal Bureau of Investigation (FBI) as a Task Force Officer. I have been assigned to the FBI as a Task force officer for over two years. I have been a Baton Rouge Police Officer for over 14 years. I am currently assigned to a violent crimes squad at the Baton Rouge RA. Prior to my assignment as an FBI TFO I was assigned to the Baton Rouge Police Department Homicide Division for 8 years, and I was

1

assigned to a violent crimes squad. I have conducted investigations into violent crimes such as homicide, attempted homicide, and firearm possession/use, among other investigations. As part of these investigations, I have conducted and participated in consensual monitoring and physical surveillance, the execution of search warrants, and debriefing of cooperating sources and witnesses. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. 2510(7), in that I am empowered by law to conduct investigations of, and to make arrest for, offenses against the United States enumerated in, but not limited to, Title 18 and Titles 21 of the United States Code.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that **PENNYWELL** has violated Title 21, United States Code, Sections 841(a)(1) and 846. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in physical surveillance of **PENNYWELL**.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the charged offense. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The United States, including the FBI, is conducting a criminal investigation of **PENNYWELL** and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1) and 846.

2

8. Since September 2022, agents and Task Force Officers ("TFOs") of the FBI Baton Rouge Resident Agency, including Louisiana State Police, Baton Rouge Police Department, and East Baton Rouge Sheriff's Office, have been investigating the heroin distribution of Edward SHAFFETT, a.k.a. "Nu" (hereinafter referred to as SHAFFETT). This investigation has identified SHAFFETT as a distributor of Schedule I and II controlled substances, including heroin and fentanyl, in the Baton Rouge, Louisiana area. During the investigation, a co-conspirator/possible source of supply has been identified as **PENNYWELL**.

9. Physical surveillance was conducted on multiple occasions, which revealed that SHAFFETT deals drugs from 4240 Ferrett Street, Baton Rouge, Louisiana, among other places within the Middle District of Louisiana. During these surveillance operations, which includes the use of remote surveillance via two pole cameras, multiple individuals were seen pulling up to 4240 Ferrett Street, briefly meeting with SHAFFETT, and on occasion others, and then leaving the area. In some of these incidents, investigators observed what appeared to be hand to hand transactions. Your affiant asserts that this observed conduct is consistent with retail/street level drug sales. **PENNYWELL** has been on more than one occasion in the vicinity of 4240 Ferrett Street. In one instance, law enforcement seized what is believed to be heroin from an individual that had communicated via telephone with SHAFFETT and was seen on Ferrett Street engaging in what appeared to be a seller/buyer drug transaction.

10. During the course of the investigation, agents and law enforcement partners have seized narcotics from individuals who purchased drugs from SHAFFETT to include fentanyl.

11. On February 14, 2023, United States Chief District Judge Shelly D. Dick of the United States District Court for the Middle District of Louisiana approved a Title-III application for the wire and electronic communications of a phone associated with SHAFFETT (hereinafter

referred to as "TARGET TELEPHONE TWO). **PENNYWELL**, is a named **TARGET SUBJECT** in that application. The interception of wire and electronic communications over TARGET TELEPHONE TWO began on February 14, 2023.[1]

12.  Interceptions over TARGET TELEPHONE TWO enabled law enforcement to confirm that **PENNYWELL** was a possible a co-conspirator/source of supply for SHAFFETT's street level drug dealing business. The pertinent calls below reflect that relationship and aid in establishing probable cause for the warrant herein requested.

13.  On February 15, 2023, at approximately 6:42 pm SHAFFETT (referred to below as "ES") receives an incoming call on TARGET TELEPHONE TWO from **PENNYWELL** (referred to below as RP) on **TARGET TELEPHONE THREE** with the following content[2]:

> ES: Hello?
>
> RP: Where you at, five(?)?
>
> ES: On the block
>
> RP: Huh?
>
> ES: On the block
>
> RP: Aight, (unintelligible)
>
> ES: Huh?
>
> RP: Me and squally about to whip down
>
> ES: Where y'all at right now?

---

[1] Previously, United States Chief District Judge Dick granted the government authorization to intercept calls over another phone belonging to SHAFFETT, 225-427-3179 (hereinafter "TARGET TELEPHONE ONE"). **PENNYWELL** was identified as a **TARGET SUBJECT** in the TARGET TELEPHONE ONE wiretap. Interceptions over TARGET TELEPHONE ONE were ended on February 24, 2023.

[2] All transcriptions are preliminary based upon a law enforcement officer typing as they listened to court-authorized interception and are subject to change.

RP: About to get off the interstate.

ES: Well, I ain't gonna lie, bitch. I about to go on College and get something to eat right quick.

RP: Alright. Hey look, I need to, I need to get something from ya. I need to buy something from ya. (Unintelligible)

ES: Aight, aight, aight.

RP: You gonna wait for me or you gonna probably bust out first?

ES: Shit I ain't gonna lie I had really already left (unintelligible).

...

RP: You gotta let me come over there chat with you for a little while (unintelligible)

ES: You gotta come see what the blocks doin man. Yall n****s act like the block then all the sudden the block ain't changed man

RP: I know but that yo shit (talking over each other) I ain't gonna never step on no n***** toes man

ES: I ain't got nothin goin on thats you know all my shit that (unintelligible). All my shit be off the phone Bo Bo. I don't need to be workin

RP: Yeah that's what I'm sayin. I know. Ain't no comin on that block (talking over each other)

RP: Well that's shit (unintelligible)

ES: What's that

RP: Ain't no change pullin right there on that block

ES: Yeah yeah right right right

RP: All that stays (unintelligible)

ES: What I'm sayin though they got change (unintelligible) No calls no so I mean no call no nothin just pullin up

RP: That be your work bro. I ain't gonna do that. I'm gonna let you (talking over each other)

ES: That be different people work man

5

RP: You the only n**** I know. (unintelligible) Stupid. That gonna pull up back there.

ES: Nah thats just cause n****s don't be n**** need to have bullshit or n****s ain't answering they phone and them peoples, them peoples know where is (unintelligible)

RP: It's like that yeah

ES: That n****s like catch yo good dollar two-dollar man out the blue like damn. (unintelligible). You know what I'm sayin?

RP: Yeah that's right

ES: Man I wouldn't tell you no lie

RP: Damn n**** turn that bitch out.

ES: It ain't no heavy big motion like that but you know (unintelligible)

RP: He got that shit, he got that shit there 24 hours. (unintelligible) you might get ten dollars. I ain't gonna lie (unintelligible)

ES: I dont lie them crack plates them bitches don't even stop. (unintelligible) You pullin on the F you gotta have forty or better man

RP: Say bitch man you gatta uh, check this out, man we can go catch, you say all you got is a ball left of that shit?

ES: Ah, of that girl?

RP: Yeah you said you sold a ball? (unintelligible) girls or something

ES: Yeah I got like something like that, I don't know what's in the bag but I know its over a ball

RP: Look my people tryna get a seven man so $700. So we could just split it I mean we could you know what I'm sayin,

ES: Aight

RP: I'm still gonna let you make you. You know what I'm sayin? We just gonna figure this shit out. But you still finna get two you heard me?

ES: I'm about to get me somethin to eat man

6

> RP: Alright but I need to get some of that other ya too though. I need to get some of that  ya. I just remember Marcel said he need two, two balls. I forgot about that.

…

During this conversation your affiant believes **SHAFFETT** and **PENNYWELL** discuss the street level/retail drug trade. When SHAFFETT says "… no calls no nothin just pulling up" and **PENNYWELL** responds "that be your work bro. I ain't gonna do that, I'm gonna let you …" your affiant asserts that SHAFFETT is confirming his role as a street level dealer and that **PENNYWELL** is confirming that he will not engage in that type of drug trade. Your affiant asserts that SHAFFETT defends his drug dealing business model to **PENNYWELL** when he states "that n***** catch yo good dollar two-dollar man out the blue like damn …." Your affiant asserts that SHAFFETT is telling **PENNYWELL** he can make $100 or $200 just from being present on the block – Ferrett Street -- and waiting for people to pull up. Further, in this conversation, your affiant avers that SHAFFETT invites **PENNYWELL** to see how the street level sales are going  -- telling him "You gotta come see what the blocks doin man." **PENNYWELL** responds "I know but that yo shit I ain't gonna never step on no n***** toes man."  Your affiant asserts that this shows **PENNYWELL** respects SHAFFETT's territory and does not want to intrude.

In addition, your affiant avers that later in the conversation **PENNYWELL** suggests partnering up with SHAFFETT to sell drugs. To that end, **PENNYWELL** explains, "[l]ook my people tryna get a seven man so $700. So we could just split it I mean we could you know what I'm sayin." Your affiant asserts that this shows that **PENNYWELL** has access to larger supply sources for drugs than SHAFFETT and wants to combine forces to make money. Your affiant avers that SHAFFETT showed interest in this arrangement when he responds, "Aight."

7

Finally, your affiant asserts that this call also shows **PENNYWELL** seeking to buy user quantity drugs from SHAFFETT. Prior to the call ending, **PENNYWELL** states "... but I need to get some of that ya too though I need to get some of that ya. I just remember Marcel said he needed two, two balls." Your affiant avers that **PENNYWELL** has another drug associate – "Marcel" – looking for cocaine – "two balls of ya" – and that he needs to get that from SHAFFETT. Your affiant believes **PENNYWELL** is asking for two "8balls" (slang term for an eighth of an ounce or 3.5 grams) of a particular drug – most likely in this context cocaine because of the reference to "girls", "ya" and "balls." Your affiant asserts that this last aspect of the call confirms a multi-purpose drug trafficking relationship between **PENNYWELL** and SHAFFETT.

14. On February 15, 2023, at approximately 7:43 pm SHAFFETT (referred to below as "ES") receives another phone call on TARGET TELEPHONE TWO from **PENNYWELL** using **TARGET TELEPHONE THREE** with the following content:

> ES: ...(Unintelligible)...
>
> RP: ...(Unintelligible... fuck me yo
>
> ES: Man fuck no bitch I had went to the hole man I had ...(unintelligible)... I see you bitch I just walked up came got some smoke right quick man
>
> RP: ...(unintelligible)...
>
> ES: ...(unintelligible)... meet me in the hole bitch
>
> RP: This you right here by ...unintelligible...
>
> ES: Huh
>
> RP: I see your truck over by girl's house bitch
>
> ES: I know. I just went up came got some smoke I'm bout to be in the hole
>
> RP: Aiight I'm ...right here... waiting on you man. My pay been waiting on me man
>
> ES: Aiight bett

15. Your affiant believes this call is a continuation of the previous call, which occurred approximately an hour earlier, in which **PENNYWELL** discussed obtaining "two balls" – likely user amount of cocaine – and a drug partnership with SHAFFETT. Your affiant avers it appears there was miscommunication on the timing of their meeting to facilitate a drug transaction. Your affiant believes that when SHAFFETT tells **PENNYWELL** to meet him at the "hole", he is referring to meeting at 4240 Ferrett which is a location that agents have observed SHAFFETT selling drugs from and likely where he maintains a source of supply for his retail drug sales. Your affiant notes that SHAFFETT does not give **PENNYWELL** any further directions, which your affiant believes shows **PENNYWELL** is familiar with the location known as the "hole." **PENNYWELL**'s familiarity with the hole is documented by physical surveillance. On March 2, 2023 a 2019 Mercedes G30 (La License Plate 321EUK), registered to Eletta Guillory (**PENNYWELL**'s girlfriend), was observed on pole camera parked outside of 4240 Ferrett Street. Also, on October 19, 2022 **PENNYWELL** was observed on or near 4240 Ferrett Street. Additionally, a confidential source previously told agents, in September 2022 that **PENNYWELL** is known to be present on Ferrett Street.

16. On February 24, 2023, at approximately 8:24 pm SHAFFETT (referred to below as "ES") using TARGET TELEPHONE TWO calls **PENNYWELL** (referred to as "RP") on **TARGET TELEPHONE THREE** with the following content:

> RP: What up?
>
> ES: What's happening Black Beezy?
>
> RP: Chilling, what's up with it?
>
> ES: You on this end with something?
>
> RP: Fuck no, I'm at the house

9

ES: You ain't got nothing out here?

RP: Let me see what my people, squally say real quick.

…

RP: Let me hit "Squally" [identified as Jason Jackson] real quick

RP: I had been suppose to drop that stuff of

ES: I'm trying to get a ball for my play

RP: Alright, bet

ES: Let me know bitch

RP: Alright

17. During this conversation, your affiant believes SHAFFETT is asking **PENNYWELL** if he has narcotics available for sale. At the start, SHAFFETT refers to **PENNYWELL** as "Black Beezy" – a variation on his moniker "Black Bo." Your affiant asserts that **PENNYWELL** says he needs to check with "his people" who he refers to as "Squally." Your affiant notes that in the February 15, 2023, call that **PENNYWELL** also refers to "Squally" [identified as Jason Jackson] as an individual with him when discussing drug trafficking with SHAFFETT. Your affiant believes that "Squally" [identified as Jason Jackson] is a drug associate of **PENNYWELL** and may be a supply source. Before the call ends and **PENNYWELL** checks with "Squally," SHAFFETT explains that he is looking "to get a ball for my play." Your affiant believes that this refers to an eighth of an ounce of cocaine for a drug customer.

18. Per an administrative subpoena, the subscriber of **TARGET TELEPHONE THREE** is PENNYWELL. There is probable cause to believe that **PENNYWELL** will continue to use **TARGET TELEPHONE THREE**, and location information will allow agents to conduct

physical surveillance from a safe distance and gather intelligence needed to further this investigation.

19. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the location of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cellsite data identifies the "cell towers" (i.e. antenna towers covering specific geographic area) that received a radio signal from the cellular telephone and, an in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers area often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the

phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

21. Based on my training and experience, I know that AT&T can collect cell-site data about **TARGET TELEPHONE THREE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result,

12

as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TARGET TELEPHONE THREE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of **TARGET TELEPHONE THREE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **TARGET TELEPHONE THREE** outside of daytime hours.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Logan Collins, Task Force Officer
Federal Bureau of Investigation

Affidavit submitted by email/PDF and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the 7th day of March, 2023.

RICHARD L. BOURGEOIS, JR., MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(225) 371-0522** ("**TARGET TELEPHONE THREE**"), which shows a subscriber as Robert **PENNYWELL**, whose wireless service provider is AT&T, a wireless telephone service provider at 11760 US Highway 1, Suite 600, North Palm Beach Florida -33408 which is being utilized by **ROBERT PENNYWELL**.

2. Records and information associated with **TARGET TELEPHONE THREE** that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

1

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

Information regarding the location of **TARGET TELEPHONE THREE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of **TARGET TELEPHONE THREE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including information generated by the "real-time tool", as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of **TARGET TELEPHONE THREE** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

Information described above in Section I that will assist in monitoring **PENNYWELL**'s location including his participation in illegal narcotics activity.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.